LEONCIA VÁZQUEZ DE SILVA ET AL., Plaintiffs and Appellants, *v.* HEIRS OF CÁNDIDO DE LOS SANTOS BOYRIÉ ETC., Defendants and Appellees.

No. 7389.  Argued June 9, 1937.—Decided March 24, 1938.

*Pedro E. Anglade* for appellants.  *José J. Aponte* and *José C. Aponte* for appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is an action of filiation in which judgment was entered against plaintiffs. The plaintiffs, Leoncia Vázquez de Silva and Juan Vázquez Boyrié, averred in their complaint that they were the children of Cándido de los Santos Boyrié, who died on June 10, 1928, conceived in the marital relations had by their father with Rafaela Vázquez during the years prior to 1899, the parents being unmarried at the date on which the children were born, and capable of intermarriage, there being no legal impediment thereto.

They further averred that their father continuously and publicly recognized them as his children, gave then everything necessary for their support and took them to live in the house of his mother, Adelaí Boyrié; and that when in 1899 he married the defendant Fernanda Mariño, took Juan to his home and continued to treat him as his son, and, when he was 11 or 12 years old caused him to assume his surname, recording him as such in school and keeping him with him until he was 16 years old, at which time the son voluntarily left his father; and that Leoncia stayed with her paternal grandmother until the latter's death, going then to live with her father where she was treated publicly and privately as his daugther until she married and left him.

There is a second cause of action in the complaint, in which the allegations of the first are repeated, and it is further alleged that the father left at his death property worth $35,000.

The prayer is for a judgment declaring the plaintiffs the natural recognized children of Cándido de los Santos Boyrié, entitled to bear his surname and to receive the hereditary portion of his estate fixed by statute.

Fernanda Mariño answered admitting that she was the heiress of Cándido de los Santos, but denying that the other defendants were also heirs. She specifically denied as well the allegations in the first count. As to the second she averred that the estate had a value of only $5,000. As a

matter of special defense she averred that her husband was impotent. She prayed that the complaint be dismissed with costs.

There was a trial at which both parties introduced voluminous evidence. The transcript fills more than 500 pages of the record. In his statement of the case and opinion on which the judgment is based, the district judge makes an ample statement of the pleadings, and, after fixing the plaintiffs' birth dates in 1890 and 1892, refers to the statute governing the case, that is, Section 135 of the Spanish Civil Code then in force in the island, and which reads as follows:

"The father may be compelled to acknowledge his natural child in the following cases:

"1. When an indisputable paper written by him, expressly acknowledging his paternity, is in existence.

"2. When the child has been in the uninterrupted possession of the status of a natural child of the defendant father, justified by the conduct of the father himself or that of his family.

"In cases of rape, seduction, or abduction, the provisions of the Penal Code with regard to the acknowledgment of the issue, shall be observed."

The Court then states:

"From the evidence adduced by the parties hereto, we may accept as facts established thereby that the plaintiffs Leoncia Vázquez de Silva and Juan Vázquez Boyrié are the natural children of Rafaela Vázquez, and were born, as we have said, on September 12, 1890 and February 8, 1892, respectively.

"That the plaintiffs while children lived in the house of Adelaí Boyrié, mother of Cándido de los Santos Boyrié, where they received food, clothing, and education, being there supported by Cándido de los Santos Boyrié, who supplied all the necessaries for their support.

"That Cándido de los Santos Boyrié married Fernanda Mariño on February 3, 1899, at which time the minor Juan Vázquez Boyrié went to live with them, remaining in their home until he was 16 or 17 years old when he went out to work for himself.

"That the other plaintiff, Leoncia Vázquez, lived with Adelaí Boyrié, staying with her even after Cándido de los Santos Boyrié married and until Adelaí Boyrié died, there receiving food, clothing, and education, furnished to her by Cándido de los Santos Boyrié,

and that there both she and the other plaintiff, Juan Vázquez Boyrié were treated as children of Cándido de los Santos Boyrié, not only by him but by his mother, Adelaí Boyrié.''

The court then cites decisions of the supreme courts of Spain and Puerto Rico for the proposition that evidence in cases of this nature must be clear and convincing, and, notwithstanding the foregoing statement of the facts established, concludes:

''These considerations lead us to the conclusion that the evidence in this case does not show clearly and convincingly that Cándido de los Santos Boyrié intended to give to the plaintiffs the stauts of natural children, since, if such had been the intention of the supposed father, he would when they left the home in which they were residing have tried to get them to return to his side and would not have ignored them completely as he did, which in our opinion shows that Cándido de los Santos Boyrié never had any intention of giving the plaintiffs the status of natural children.''

The considerations to which the Court refers are passages taken from the cases of *Morales* v. *Heirs of Cerame,* 30 P.R.R. 784; *Torres* v. *Heirs of Caballero,* 39 P.R.R. 654; *Vega* v. *Heirs of Vega,* 32 P.R.R. 548, and *Montalvo* v. *Montalvo et al.,* 25 P.R.R. 800, and these further considerations:

''Furthermore, the Supreme Court of Spain in another more recent judgment, that of October 12, 1907, has said:

'' 'This status, consisting in the public opinion of the relationship between the child and his natural father, must necessarily be shown, according to the decisions of the Supreme Court, by direct acts evidencing the free and spontaneous will of the father, or of the family as the case may be, to accept as a natural child the one claiming recognition and thoroughly establishing the continuity of the relationship, that is, that the child maintains with the father, as such child, constant and uninterrupted relations, it being legally improper to confuse acts which may show to a greater or lesser extent a presumption or conviction that one may have as to the paternity of natural children, with acts which show his intention to give these children such status.'

''If we analyze the evidence in this case, we find that the continuity of enjoyment of the status to which this doctrine refers has

not existed, since we find two big gaps in the relations between the father and the children, first at the time of their birth, and thereafter when the plaintiffs left the home in which they had been living and did not again return to take a place in their supposed father's life.

"We would like to have known the relationship between Cándido de los Santos Boyrié and the plaintiffs, in order to determine clearly and convincingly why the plaintiffs were as children taken to the house of Adelaí Boyrié.

"Was this move due to the fact that they were Mr. Boyrié's children? Was it an act of generosity on his part? Was it due to a desire on Mr. Boyrié's part to assist a person of whom he was very fond? Briefly, we know nothing of the reasons which might have impelled Boyrié to take the children with him.

"It is known that there are many persons and husbands and wives who, finding themselves childless and alone in life, lavish their care and protection on young children, even those in their tenderest years, taking them into their homes, feeding them, educating them, loving them as children, and working for their happiness in all things. This is what is known in Puerto Rico as foster parent and foster children (de crianza).

"Furthermore, the plaintiffs left Cándido de los Santos Boyrie's house when they reached the age of 18 or 20. Their supposed father did not seek them out, did not attempt to make them return to his home, but abandoned them completely. Moreover, the children in no way concerned themselves with Cándido de los Santos Boyrié, never tried to find out about his health, never even in the last years of his life or at the time of his death went to receive the blessing of that man who, whether their father or not, had assisted them, giving them all the necessaries of life and loving them like a father.

"From the time at which the plaintiffs left the home of Cándido de los Santos Boyrié until his death on June 9, 1929, about 18 or 20 years have passed. The plaintiffs did nothing during this time to claim filiation. If they had done so, we would have had the opportunity to hear Cándido de los Santos Boyrié and would have been able to form a more exact opinion of the facts in this case. They waited until his death and then those who never had a word of gratitute or affection for Cándido de los Santos came before this Court seeking not a surname, not a name, but solely a portion of the estate from his defendant heirs."

As to the defense of impotence the Court said:

"Evidence has been offered by the defendant to support the defense set out in her answer, that is, that Cándido de los Santos Boyrié, at the time of the conception of the plaintiffs, was sterile, but the evidence so offered does not in our opinion show that at the time of the plaintiffs' birth Cándido de los Santos Boyrié was suffering from hydrocele and that this ailment had become so far advanced as to incapacitate him for procreation."

Plaintiffs, being dissatisfied, appealed to this Court. They contend that the judgment is contrary to the law and to the evidence.

The evidence was contradictory. As we know, the defendant denied absolutely the averments of the complaint, and her evidence tended to show that the plaintiffs were not the children of Cándido de los Santos Boyrié but of Bernardino Camacho. The Court, as we also know, found it to have been proven that while in the house of Mrs. Boyrié the plaintiffs "were treated as children of Cándido de los Santos Boyrié, not only by him but by his mother, Adelaí Boyrié." The Court does not say like foster children or adopted children, but simply like children. With this the Court, in our opinion, decided the fundamental conflict in favor of the plaintiffs.

It was later, when the court sought to give reasons for its final conclusion dismissing the complaint, influenced by the rigidity of the decisions which were emphasized to their furthest extent, that the court expressed its fear that in taking and supporting the children, Boyrié could have been moved by a generous impulse and not by the mandate of his conscience as a father, and that attention was called to the "two big gaps in the relations between the father and the children, first at the time of their birth, and thereafter when the plaintiffs left the home in which they had been living and did not again return to take a place in their supposed father's life."

Let us examine the evidence.

Alberto García, a childhood friend and associate of Cándido de los Santos Boyrié in his work, married to a cousin of his, testified that he was acquainted with Cándido and with Rafaela and that they had cohabited. Counsel for the defendant objected, and the trial judge did not permit the witness to testify as to the concubinage on the ground that it is not a basis for the action under the statute governing the case. After various objections, the record emerged as follows:

"Q. So that you knew Rafaela Vázquez?
"A. Yes, sir.
"Q. And Cándido de los Santos Boyrié?
"A. Yes, sir.
"Q. Did they have any children?
"A. Yes, sir.
"Q. Who are the children that they had?
"A. Well, Leoncia Vázquez and her brother, the young man.
"Q. Juan?
"A. Juan."

The witness repeatedly stated that Cándido de los Santos treated the plaintiffs as his children, publicly and privately, that they lived in the house of their "grandmother," mother of Cándido, and that he regarded them as his wife's relatives.

Another witness, Eligio Solier, a mason like Cándido and an intimate friend of his and in whose house Cándido recuperated from an illness, stated that the plaintiffs were treated like children while in his house.

Eduardo Soto testified to the same effect, and Margarita Rivera, a niece of Cándido, said that the plaintiffs are their cousins "because they were children of my uncle Cándido de los Santos," whom she knew "while living in his house and under the same roof with him and his wife."

Adelina Estrada, more than 60 years old, a friend of Cándido since childhood and later his *comadre*, who used to visit the family, saw the plaintiffs living first in the house of their maternal grandmother and then with their paternal

grandmother, and lastly in Cándido's house itself after he had married the defendant, where they were treated "as children, very well, I always saw them well treated, education and everything good, like children which they were because they treated them like their children which they were, and the step-mother the same, like their foster children which they were. Q.—Whose foster children? A.—Doña Nanda's and those who were raising them, and he like a good father was always giving them everything good."

Pablo Pillot, who knew Cándido as far back as he can remember, testified fully about the treatment as children which the plaintiffs had from Cándido. Referring to the time when the good relations between the children and their father were broken off, he said that he was away in Guayama, and on returning "I went to the house where doña Nanda now lives, by the said of Guillermo Garáu's house, we chatted and then I asked for Juan and Oncita, and she said: 'Look, you know that Juan went away some time ago and now just lately Oncita went away,' and I replied: 'Why?' and she said: 'Because she fell in love with a man I don't like and if I am working it is for those who are my children and not for some loafer' and I said: 'Well, who is he?' and she said: 'Silva the shoe maker;' 'And where is Oncita?' . . . 'Well, she is in Aguirre with Juan.' "

He referred then to the following conversation after the death of Cándido:

"A. I told doña Nanda: Look, Nanda, I know what they say . . . that Juan and Oncita are not children of the old man; you know that this is not true . . . .

"A. She says to me: 'Oh, Pablo, sometimes they do pretty bad things to one' and I said to her: Well, lets see if we can't fix this, if we can't find a solution, a way to fix this up amicably . . .

"Q. Did you agree on anything?

"A. Yes, of meeting after lunch to find a solution and then I said to her: I will be back about two o'clock this afternoon and at that time I came back and then she did not receive me . . .

"Q. But when you talked to her, did you speak of the children?

"A. Yes, of course, I said to her: give them something.

"Q. Did she agree?

"A. Yes, sir, she agreed to that.

"Q. She agreed to what, what is that?

"A. In fixing it up with the children.

"Q. Why was she going to fix it up with them?

"A. Because she knew that they were his children.

"Q. Whose?

"A. Cándido's, and I said to her: Well you know it, and she said to me: 'Yes, I know it, but sometimes they make you do things that you shouldn't; then she bowed her head and said to me: after lunch, anything, if they accept it . . . 'I had not seen either Juan or Oncita, I went to avoid a lawsuit."

Francisco Boyrié, a relative of Cándido, said that the latter wanted him to marry his daughter "Oncita" so that "the money would stay in the family," and repeatedly stated that Juan and Oncita, the plaintiffs were treated as children by Cándido.

All of this is in addition to the testimony of the plaintiffs, which was very full, and to that of Domingo Silva who married Leoncia against her father's wishes as a result of which Leoncia had to leave her father's house, and to that of Francisco Torregrosa, who tried to intercede with Cándido to permit his daugther to marry Silva, without success, because Cándido felt that Silva was not financially in a position to marry his daugther.

In our opinion the evidence is clear and convincing. It shows that the plaintiffs enjoyed for many years the status of recognized natural children of Cándido de los Santos Boyrié.

There is an explanation for the gaps to which the trial judge adverts. If there were no more details of the marital relationship between Boyrié and the plaintiffs' mother and of the life of the plaintiffs during childhood, it was due to the ruling of the trial judge himself in holding upon defendant's

objection, that the testimony with respect to the concubinage of the parents was inadmissible, and if during the last years of the father's life his relations with his children were not close, it was certainly due to their disagreement and to the manner in which both left the home in which they had lived for so many years.

The father was apparently one of those hardworking artisans who by his own labors and persistence accumulates a small fortune, which he thereafter regards as the most precious fruit of his life. In his younger years he had illicit relations with a woman and did not abandon the children born to them. The mother went her way and he took his children to his mother's house where a young woman, the defendant, was also living, whom he then married, taking the boy to live with him thereafter and finally the girl when the grandmother died. The seed was not perhaps sown in fertile soil. There were disagreements, and the children, with or without cause, left or abandoned their father. The bad feeling persisted, and years passed and the father died died without a reestablishment of their previous relationship.

Their failure to become reconciled does not imply the loss of the status which one party had conferred and the other had acquired. The failure of the parent to recognize his children in writing before his death does not destroy his prior acts.

As a matter of fact, we believe that the district judge was influenced by the strictness of the authorities on matters of evidence in these cases and for the reason that he believed that the children had behaved badly. Otherwise, in view of the facts which he found to have been proved, he would not have stopped but would have reached the conclusion inevitably following from the existence of such facts, that is, a judgment authentically recognizing the plaintiffs as the natural recognized children of Cándido de los Santos Boyrié, entitled to bear their father's surname and to enjoy their inheritance to the extent provided by statute.

Such is the judgment which must be entered in lieu of the one appealed from, which is reversed, without special award of costs.

Mr. Justice Wolf dissented.

Mr. Justice Córdova Dávila took no part in the decision of this case.